[ECF No. 72]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **RICHARD JOHNSON**, <br><br> Plaintiff, <br><br> v. <br><br> **WALMART STORES EAST, LP,** <br><br> Defendant. | Civil No. 20-2450 (JHR/MJS) |

**OPINION AND ORDER**

This matter is before the Court on the motion by defendant Walmart Stores East, LP ("Defendant") to dismiss plaintiff Richard Johnson's ("Plaintiff") left leg injury claims for failure to comply with the undersigned's July 27, 2023 Order. ECF No. 72. Plaintiff opposes the motion.[1] ECF No. 75. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court decides this motion without oral argument. For the reasons that follow, Defendant's motion is **DENIED** without prejudice.

**I.   Background**

This case arises from injuries Plaintiff allegedly sustained on March 16, 2018, after slipping and falling on water and wet paper towels on the bathroom floor of Defendant's store in

---

[1] Plaintiff requested leave of this Court to file a sur-reply to respond to arguments raised in Defendant's reply brief. ECF No. 77. Defendant objected to Plaintiff's request as baseless. ECF No. 78. Parties are not to file sur-replies absent leave of Court, and such leave lies within "the District Court's sound discretion." Levey v. Brownstone Inv. Grp., LLC, 590 F.App'x 132, 137 (3d Cir. 2014); see L. Civ. R. 7.1(d)(6). Here, the Court exercises its discretion to consider the sur-reply because the inclusion of the affidavit attached to the sur-reply creates a more complete record and will allow the Court to more fully and fairly evaluate Defendant's motion. See St. Clair Intell. Prop. Consultants, Inc. v. Samsung Elecs. Co., Ltd., 291 F.R.D. 75, 80 (D. Del. 2013) ("A Court may grant leave to file a sur-reply if it responds to new evidence, facts, or arguments").

Lumberton, New Jersey. ECF No. 1-1 at 2, ¶ 1. Plaintiff initiated this action by filing a complaint in the New Jersey Superior Court on November 27, 2019. ECF No. 1 at 1, ¶ 1. Defendant removed the litigation to this Court on March 6, 2020. Id. The parties have engaged in discovery and the Court has conducted multiple case management conferences as Plaintiff has pursued surgical and other treatment options for his injuries. See ECF Nos. 30, 33, 34, 36, 41, 53, 55, 60, 61.

## II.    Discussion

Defendant asserts Plaintiff failed to comply with this Court's order of July 27, 2023,[2] when, after admission to the emergency room, surgeons amputated Plaintiff's left leg, without Plaintiff notifying Defendant in advance. ECF No. 72-1 at 2. Defendant alleges that Plaintiff not only violated the Court's order, Plaintiff deprived Defendant of the opportunity to conduct an independent medical examination to contest Plaintiff's allegations. Id. Defendant argues it is therefore entitled to dismissal of any claims related to any injury to Plaintiff's left leg pursuant to Federal Rules of Civil Procedure 16(f), 37(b)(2)(A), and 41(b). Id. at 4.

Plaintiff contends amputation was an emergency treatment of last resort for a sepsis infection and thus dismissal of his claims would be an unreasonable application of Rule 16(f) under the circumstances, is not appropriate relief under Rule 37(b)(2)(A), and is unwarranted under Rule 41(b) because medical records of the amputation and preceding examinations should suffice to inform Defendant's experts. ECF No. 75 at 10-16.

---

[2] The order states: "Having conferenced with counsel on July 27, 2023, and for good cause shown, this case shall remain ADMINISTRATIVELY TERMINATED. Counsel shall maintain an open dialogue about any future surgical procedures for plaintiff and shall meet and confer prior to, and well in advance of, any surgical procedures taking place. Counsel should also inform the court via letter of any confirmed surgeries. [Scheduling details omitted.]" ECF No. 60.

Rule 16(f) empowers the Court to sanction a "a party, its attorney, or both" who, relevant here, "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). Rule 37(b)(2)(A), referenced in Rule 16(f), lists seven non-exclusive sanctions the Court may impose:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> [Fed. R. Civ. P. 37(b)(2)(A).]

Rule 41(b) provides for involuntary dismissal "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules] or a court order." Fed. R. Civ. P. 41(b).

In the Third Circuit, sanctions for disobedience of a court's order depend on the so-called Poulis factors:

> (1) [T]he extent of the party's personal responsibility;
>
> (2) [T]he prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
>
> (3) [A] history of dilatoriness;
>
> (4) [W]hether the conduct of the party or the attorney was willful or in bad faith;

>(5) [T]he effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
>
>(6) [T]he meritoriousness of the claim or defense.
>
>[Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 866 (3d Cir. 1984).]

"[N]o single Poulis factor is dispositive," and "not all of the Poulis factors need be satisfied in order to dismiss a [pleading]." Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008) (first quoting Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003); and then quoting Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)). "The choice of an appropriate sanction generally is committed to the sound discretion of the district court." Garcia v. S&F Logistics, Civ. No. 21-4062, 2022 WL 14228982, at *3 (E.D. Pa. Oct. 24, 2022) (quoting DiGregorio v. First Rediscount Corp., 406 F.2d 781, 788 (3d Cir. 1974)). "Any sanction issued must be 'just' and 'the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery.'" Unimaven, Inc. v. Texas TR, LLC, Civ. No. 17-12008, 2020 WL 5406162, at *4 (D.N.J. Sept. 8, 2020) (quoting Harris v. City of Philadelphia, 47 F.3d 1311, 1330 (3d Cir. 1995)).

"A default or dismissal is an 'extreme' sanction, reserved for cases where a party has acted in 'flagrant bad faith' and 'callous disregard of [his or her] responsibilities." Younes v. 7-Eleven, Inc., 312 F.R.D. 692, 712 (D.N.J. 2015) (quoting Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976)).

"In the context of sanctions, it bears emphasis that 'the severity of the prejudice caused by the violation should be proportional to the sanction imposed in an effort to cure that prejudice.'" Wilkerson v. Brown, Civ. No. 96-4920, 2009 WL 2049162, at *5 (D.N.J. July 8, 2009) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 564 F. Supp. 2d 322, 335 (D.N.J. 2008)) (emphasis added). "A dispositive sanction is warranted only where 'the non-responsible party's case is

4

severely impaired because it lacked the information that was not produced.'" GN Netcom, Inc. v. Plantronics, Inc., 930 F.3d 76, 82 (3d Cir. 2019) (quoting Bull v. United Parcel Serv., Inc., 665 F.3d 68, 83 (3d Cir. 2012)).

To determine what sanction is appropriate, the Court should "examine factors such as the severity of the transgression, whether it was intentional, negligent or inadvertent, and the timing and circumstances of the eventual document production. Other factors to consider are the nature and quality of the conduct at issue, whether the attorney or the client is responsible for the culpable conduct, whether there was a pattern of wrongdoing requiring a stiffer sanction, whether the wrongdoing actually prejudiced the wrongdoer's opponent or hindered the administration of justice, and the existence of mitigating factors." Younes, 312 F.R.D. at 713. "Appropriate or 'just' sanctions may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." Id. (citing Langer v. Monarch Life Ins. Co., 966 F.2d 786, 811 (3d Cir. 1992)).

In accordance with these principles, the Court analyzes Defendant's request for sanctions using the Poulis factors:

Extent of a Party's Personal Responsibility: This factor evaluates whether a party or counsel are primarily responsible for the conduct at issue. Poulis, 747 F.2d at 868. The Third Circuit has "increasingly emphasized visiting sanctions directly on the delinquent lawyer, rather than on a client who is not actually at fault." Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund, 29 F.3d 863, 873 (3d Cir. 1994) (quoting Carter v. Albert Einstein Med. Ctr., 804 F.2d 805, 807 (3d Cir. 1986)). Here, Plaintiff's certification states "I can say confidently that my attorneys did keep in close contact with me about my case and my condition." ECF No. 79 at 7, ¶ 11. This diligence by counsel is corroborated by the record, which reflects counsel's consistent status

updates to the Court and engagement at case management conferences. See ECF Nos. 30, 33, 34, 36, 41, 53, 55, 60, 61. Most importantly, when counsel called Plaintiff and learned that an amputation had been scheduled for later that day, counsel called and emailed notice to Defendant the same day.³ ECF No. 72-8 at 1.

While the timing of Plaintiff's notice to his counsel would be unacceptably short were this surgery pre-planned, the Court declines to find Plaintiff culpable, under these circumstances, where the surgery was not pre-planned and was scheduled after he was admitted to the emergency room with a sepsis infection showing acute kidney injury. ECF No. 72-13 at 2. Notwithstanding the unlikelihood or impracticably of an independent medical examination of a patient in emergency hospital care with a life-threatening infection, Plaintiff's certification demonstrates amputation was a treatment of last resort, one Plaintiff "repeatedly" turned down and only "until the eleventh hour did [he] want to or actually believe that [he] would consent to and undergo the amputation." ECF No. 79 at 6, ¶ 8. Plaintiff's certification avers that he was "consumed and paralyzed by the unavoidable surgery" once amputation became the only option: "At no time after being told that I

---

³ Defendant argues that the medical records demonstrate "inconsistencies in the version of events provided by Plaintiff's [c]ounsel" because if the surgery occurred on September 19, 2023, Plaintiff was admitted to the hospital on September 13, and counsel spoke with Plaintiff the week prior to the surgery, "then they had a discussion while [Plaintiff] was in the hospital or shortly beforehand." ECF No. 72-1 at 8. Essentially, Defendant argues that Plaintiff's condition was rapidly deteriorating and the hospital admission, under the circumstances, was not an emergent event excusing non-compliance with this Court's Order, as amputation was imminent and inevitable. The record, however, is not so clear. The Court observes that Plaintiff "previously refused amputation" and "that there have been multiple attempts to save the knee with antibiotic therapy." ECF Nos. 72-11 at 3, 72-13 at 2. Prior to his admission to the emergency room, there was no scheduled date for surgery. ECF No. 72-8. It was only when Plaintiff's counsel followed up on September 19, 2023, approximately a week later, to get an update on scheduling, that he learned of Plaintiff's emergent leg amputation scheduled for later that day. Id. Plaintiff has further confirmed "At no time after being told that I would lose my leg and the date of surgery did I remember—much less made any conscious decisions—to contact my attorneys." ECF No. 79 at 7, ¶ 14. Accordingly, the Court declines to fault Plaintiff's counsel for not notifying Defendant and the Court of this emergent development.

would lose my leg and the date of surgery did I remember—much less made any conscious decisions—to contact my attorneys." Id. at 7, ¶ 15. Plaintiff's distress is corroborated by his treating physicians, who noted in his medical records that Plaintiff "pulled out multiple IV lines," was referred to a psychiatrist "for agitation," and was prescribed four medications for "anxiety/depression/panic attacks." ECF No. 72-13 at 2.

Accordingly, the Court, on this record, declines to find Plaintiff, or his attorney, culpable for any delay in notifying the Court and Defendant of the amputation.

Prejudice to Adversary: This factor considers the prejudice to Defendant, as Plaintiff's adversary, resulting from the conduct at issue. Poulis, 747 F.2d at 868. Here, Defendant asserts it has been deprived of the opportunity to conduct an independent medical examination of Plaintiff's leg, limiting the evidence its expert can review to notes and images from Plaintiff's treating physicians instead of examining the physical appendage itself. ECF No. 76 at 5. The circumstances of this slip-and-fall case, specifically the plethora of evaluations throughout the pendency of this litigation by various physicians of Plaintiff's condition and prognosis, contextualize the importance of this evidence. However, this factor is not dispositive and carries less weight when the evidence lost was documented prior to destruction. See Meridian Nursing & Rehab at Shrewsbury v. Ctrs. for Medicare & Medicaid Servs., 555 F.App'x 177, 181 (3d Cir. 2014). Here, Defendant's experts will be permitted to assess the condition of Plaintiff's leg based on notes, images, and other records prepared by Plaintiff's treating physicians. To that end, the Court orders the production of any and all medical records concerning the leg, including but not limited to treatment and medical records from the surgery, including any photographs, to the extent this has not already been produced. Moreover, this Order is without prejudice to Plaintiff making a further application to the Court at the time of trial to bar any argument that Defendant's expert testimony

7

should be accorded less weight because the expert did not personally examine the leg, or alternatively to renewing this motion, should the production of additional medical records, reveal new facts.

History of Dilatoriness: "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874. "Courts have found a history of dilatoriness supporting dismissal when a plaintiff's failure to comply with court orders, appear for hearings, or engage in discovery is extensive and repeated." Reilly v. Home Depot U.S.A., Inc., 670 F.Supp.3d 126, 144 (D.N.J. 2023). This factor weighs against sanctions in this case, as the Court finds that Plaintiff's counsel has consistently apprised Defendant and the Court of Plaintiff's medical condition, including the prospects for amputation over several case management conferences.[4]

Bad Faith: This factor applies upon "callous disregard of responsibilities" by a party or counsel, not merely "negligent behavior." Reilly, 670 F.Supp.3d at 145 (quotations omitted). Absent direct evidence of intent to disregard court orders, "[w]illfulness involves intentional or self-serving behavior." Adams, 29 F.3d at 875. For example, the requisite intent was indirectly demonstrated by a plaintiff's failure to answer "crucial interrogatories" over seventeen months "despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs . . . in the face of warnings that their failure to provide certain

---

[4] The status of plaintiff's leg was discussed before the Court during a case management conference on November 18, 2022, ECF No. 49, which followed the September 30, 2022 filing of a letter by Plaintiff's counsel advising that Plaintiff's "doctor found an infection in his knee which will require another procedure in about three weeks" and counsel would "provide updates on the date of the knee surgery as well as an update on Plaintiff's shoulder surgery at the next conference." ECF No. 46. Plaintiff consistently updated the Court and his adversary concerning Plaintiff's condition over the course of multiple case management conferences. See ECF Nos. 49, 53, 55, 60.

8

information could result in the imposition of sanctions." Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 641 (1976). The Court declines to find a similar intent to thwart this Court's orders in Plaintiff's decision to follow the advice of his treating physicians and undergo amputation following admission to the emergency room. Plaintiff's certification states amputation was a treatment of last resort, one he had declined repeatedly during the pendency of this litigation and which only became unavoidable after he had been admitted to the hospital for sepsis, a life-threatening condition. ECF No. 79. Plaintiff asserts the stress of deciding to amputate overwhelmed him, causing him to remove multiple IV lines and be prescribed several psychiatric medications. ECF No. 75-1 at 4. The Court simply cannot find, on this record, that counsel or Plaintiff himself acted with bad faith to warrant the extreme sanction of dismissal.

Effectiveness of Alternative Sanctions: The Court must "consider the effectiveness of other, less drastic sanctions." Reilly, 670 F.Supp.3d at 146 (citing Poulis, 747 F.2d at 868). Such alternatives may include reasonable attorney's fees and costs incurred in connection with documenting and remedying the sanctionable conduct, reopening discovery to afford the injured party an opportunity to obtain alternatives to the lost discovery, or other methods of curing the prejudice caused by the conduct at issue. Id. Here, while Defendant is now unable to physically examine Plaintiff's leg, it appears clear that several physicians examined and documented it closely in evaluating Plaintiff's condition and recommending treatment options. As already addressed herein, the Court orders the production of any and all medical records concerning the leg, including but not limited to medical records from the surgery, including any photographs, to the extent this has not already been produced. Defendant has not demonstrated that these records would be insufficient other than to argue that "no amount of 'medical record review' can replace the hands-on examination by an expert." ECF No. 76 at 5. However, it appears clear that the

severity and extent of Plaintiff's infection, upon admittance to the emergency room, would have likely rendered any "hands-on" examination to be of limited utility and that Plaintiff's extensive treatment records will provide a basis for defendant's proposed expert to opine. Jimenez v. Weiner, 8 A.D.3d 133, 133-34 (N.Y. App. Div. 2004) (declining to strike the answer or preclude presentation of evidence at trial where ramp upon which plaintiff fell was destroyed before inspection by defendant's experts, but such experts agreed photographs of ramp before destruction sufficed to inform expert opinion); see also King v. Pittsburgh Water & Sewer Auth., 139 A.3d 336, 347 (Pa. Commw. Ct. 2016) (declining to impose adverse inference or other sanction without evidence color photo of lost sewer grate was insufficient to inform expert opinion); Prasad v. B.K. Chevrolet, Inc., 184 A.D.2d 626, 626-27 (N.Y. App. Div. 1992) (declining to preclude presentation of evidence at trial where prejudice of lost evidence addressed by limited deposition of expert who moved interior components of car without altering their condition). Accordingly, while the Court does not find that dismissal, the most severe sanction, is warranted, the Court does so without prejudice to Defendant making a further application at the time of trial to bar any argument that Defendant's expert testimony should be accorded less weight because the expert did not personally examine the leg or alternatively to renewing this motion, should the production of additional medical records, reveal new facts.

Meritoriousness of the Claim: Given the other Poulis factors do not support the "extreme" sanction of dismissal, and that Defendant's motion to dismiss does not argue Plaintiff's claims fail as a matter of law or for other defect in pleading, the Court declines to disturb the "neutral" weight ascribed to this factor by default. Reilly, 670 F.Supp.3d at 146.

**IT IS**, therefore, on this **21st** day of **March 2025**,

**ORDERED** that Defendant's motion to dismiss any claims related to Plaintiff's left leg injury for failure to comply with the undersigned's July 27, 2023 Order is **DENIED** without prejudice; and it is further

**ORDERED** that Plaintiff shall, by no later than **April 11, 2025**, produce any records in his possession documenting the condition of his leg before amputation, the surgery itself, and any forward-looking prognoses, to the extent that these have not already been provided and Plaintiff shall provide Defendant with any authorizations necessary to obtain such additional discovery from treating physicians; and it is further

**ORDERED** that the Court declines to assess attorney's fees or costs in connection with this motion finding that the circumstances make the award of any such fees unjust.

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge
